(103 N. W. 423.)

---

THE COUNTY OF DICKEY v. W. W. DENNING.

Opinion filed February 4, 1905.

**Schools — County Superintendents — Salaries.**

> Construing section 652, Rev. Codes 1899, which provides a graduated salary for county superintendents of schools corresponding to the number of schools or departments of graded schools under their official supervision in the preceding year, it is held that schools in special districts are not under their official supervision, and are not to be included in computing their salary.

Appeal from District Court, Dickey county; *Lauder, J.*

Action by the County of Dickey against W. W. Denning. Judgment for plaintiff and defendant appeals.

Affirmed.

*McCumber, Forbes & Jones, Purcell, Bradley & Divet,* and *Morrill & Engerud,* for appellant.

*George T. Webb,* for respondent.

Young, J. This action is prosecuted by Dickey county to recover from the defendant certain sums of money which it alleges were unlawfully paid to and received by him as and for salary as superintendent of schools. The defendant interposed a general demurrer to the complaint. This was overruled, and the defendant has appealed from the order overruling the same.

The complaint shows that from January 5, 1903, when the defendant entered upon the duties of his office, up to and including the month of September of that year, he drew a salary computed upon the basis of all the schools and departments of schools in his county, including the schools and departments of schools in the special districts of the city of Oakes and the city of Ellendale, in said county. The entire controversy is as to whether the schools in these two cities should be included in computing his salary. If they should be included, it is admitted that he has been paid only the salary allowed by law. If they should not be included, it is conceded that he is liable for the amount demanded in the complaint.

It will thus be seen that the real, and indeed the only, question is as to what schools should be included in computing the defendant's salary. Our statute recognizes four kinds of public schools, each being classified according to the character of the district organization: (1) Those known as common schools; (2) schools in special school districts; (3) schools in independent school districts; and (4) schools in cities organized under a special law. The cities of Oakes and Ellendale are special school districts. The salaries of county superintendents are regulated by section 652, Rev. Codes. This section, after providing generally for a graduated salary corresponding to the number of schools which have been taught in the county at least three months during the preceding school year, declares that " the amount of his salary shall be determined each year by the actual number of schools or separate departments in graded schools over which such superintendent had official supervision during the preceding year. * * *" Counsel for the county contend, and this view was sustained by the trial court, that schools in special districts are not under the "official supervision" of county superintendents. We fully agree with this contention. The provision last quoted plainly contemplates that there are or may be schools in each county which are not to be included in the computation. The language is restrictive. It authorizes the in-

clusion of those under his "official supervision" and excludes those which are not. It assumes that there are public schools in the county over which the superintendent does not have "official super-vision." The decisive question, then, is this: Are schools in special districts under his "official supervision"? In the absence of an express declaration by the legislature, the answer to this question would have to be ascertained from an extended examination of the statutory powers and duties of county superintendents in reference to special schools. This, however, is not necessary, for the legislature has expressly declared what schools shall be under his supervision. Section 639, Rev. Codes 1899, reads as follows: "The county superintendent of schools shall have the general superintendence of the public schools in his county except those in cities which are organized under special law and those in special or independent districts." The schools in Oakes and Ellendale are special districts, and by the plain language of the above section are excluded from the "general superintendence" of the county superintendent. They are not under his supervision. His duties in reference to schools "under his supervision" are prescribed by section 640, Rev. Codes 1899. He is required to visit them, to observe the condition of the schools, the character of instruction given, the methods and ability of teachers, and the progress of the pupils, and to "advise and direct the teachers in regard to the instruction, classification, government and discipline of the school and course of study," and to keep a record thereof, which shall be open to the inspection of any school director. No such duties are imposed in reference to schools not "under his supervision," i. e., those "in cities which are organized under special law and those in special or independent districts." As to such schools the supervisory power is lodged elsewhere. Section 799, Rev. Codes 1899, commits "the immediate supervision" of schools in special districts to "the board of educa-tion or the school superintendent appointed by such board;" and sec-tion 797, subdivisions 11 and 12, imposes upon the board of educa-tion the power and duty of adopting rules for the organization, grading and government of such schools and the duty of personal visitation. It is true section 799, supra, commits the "immediate supervision" of special schools to the board or the superintendent appointed by it, "subject to such directions and supervision by the county superintendent as are provided for in this chapter." The language just quoted does not, however, purport to confer super-

visory power upon the county superintendent, but apparently assumes that other provisions of the chapter do confer that power. An examination of the entire chapter will show that no such power is conferred, while, on the contrary, section 639, supra, expressly removes special schools from the supervision of county superintendents.

Counsel for defendant contend that, even though special schools are not "under the supervision" or "general superintendence" of county superintendents, they are under his "official supervision," claiming that there is a distinction between "general superintendence" and "official supervision." It is pointed out that county superintendents have the general power of granting and revoking certificates of teachers employed in public schools, including those employed in special districts; that they have duties to perform in reference to the apportionment of the state tuition fund, and are required to receive and file reports, to gather statistics, and perform various duties in reference to all of the public schools of the county, including special schools. In our opinion, these several duties are not supervisory in their nature. They affect the schools indirectly, it is true, but only indirectly. They are more properly classed as administrative duties. Other county officers are also charged with duties with affect the public schools; for example, the treasurer and auditor, in the collection and distribution of taxes, including the distribution of the state tuition fund. It would hardly be contended that because of this they have "official supervision" of public schools. The argument proves too much. If the contention of defendant's counsel is sound, the performance of the duties referred to amounts to "official supervision." In that event all public schools are under the "official supervision" of the county superintendent, and should be counted in computing his salary; for all public schools are affected by the several acts which are relied upon. That this was not the purpose of the legislature is clearly shown by the restrictive language of section 652, previously quoted, which authorizes the inclusion of schools which are "under his official supervision" and excludes those which are not. The fact that they are charged with duties relating to schools not under their supervision has no significance in construing the statute fixing the amount of the salary. The salary provided is compensation for the performance of all the duties imposed by law. The legislature may, in its discretion, impose duties upon an officer other than those

which immediately relate to his office. This is so frequently done that instances need not be cited, and the addition of such duties gives no right to added compensation.

It follows that the complaint states a cause of action, and the demurrer was properly overruled.

Order affirmed.

MORGAN, C. J., concurs. ENGERUD, J., having been of counsel, did not participate in the decision of the above case.